581 A.2d 961

**Cynthia L. McCULLOUGH, an Individual, and Michael McCullough, her Husband, Appellants,**

v.

**XEROX CORPORATION, a Corporation.**

Superior Court of Pennsylvania.

Argued Sept. 18, 1990.

Filed Oct. 23, 1990.

136

John D. Hendricks, Pittsburgh, for appellants.

Eric Falk, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and TAMILIA and HOFFMAN, JJ.

PER CURIAM:

Appellants Cynthia McCullough and Michael McCullough, her husband, filed a complaint in trespass on January 10, 1983 against appellee Xerox Corporation ("Xerox"). As stated by the trial court:

Plaintiff [Cynthia McCullough] commenced employment with the Defendant in August of 1979 as a technical representative. Her duties included repairing and cleaning photo copy machines using various chemicals. Plaintiff continued her employment until January of 1981 when she claimed she could no longer work. On or about December 7, 1981, she returned to work for the Defendant and commenced training to repair and clean model 800 typewriters sold by the Defendant. She continued to work until January 4, 1982 at which time she was terminated for the reason that her employer was unsatisfied with her progress on the model 800 typewriter.

During the period she was off work, Plaintiff was diagnosed as having sarcoidosis. The instant claim, as well as the Workmen's Compensation claim, was based on Plaintiff's theory that her sarcoidosis was caused and/or aggravated by the chemicals to which she was exposed during the course of her employment with the Defendant.

(Slip Op., Musmanno, J., 3/2/90, pp. 2–3.) Xerox filed preliminary objections to the complaint and appellant filed preliminary objections to Xerox's preliminary objections. By Order dated April 6, 1983, all preliminary objections were withdrawn and Xerox was ordered to file an answer to appellants' complaint. However, because of a pending workmen's compensation claim, the April 6, 1983 Order also stayed the civil action pending final disposition of the workmen's compensation claim.

Appellant/wife's claim for workmen's compensation benefits was dismissed by Order dated March 2, 1983. The decision of the referee was affirmed on appeal to the Worker's Compensation Appeal Board, and the board's decision was affirmed on appeal to the Commonwealth Court. The Supreme Court denied appellants' petition for allow-

ance of appeal on August 31, 1987 (285 W.D. Allocatur Dkt.1986). Appellants then petitioned to have the stay of proceeding removed, which petition was granted by Order dated July 26, 1989. Subsequently, Xerox filed a motion for summary judgment, which was granted by Order dated December 19, 1989, and appellants' complaint was dismissed with prejudice. Appellants' motion for reconsideration was also denied, and this appeal followed.

On appeal, appellants argue they may pursue a cause of action at common law since there has been a determination by workmen's compensation authorities that appellant/wife's injuries are not recognized as compensable injuries under the Workmen's Compensation Act ("Act"), 77 P.S. § 1 *et seq.*

■ There is no dispute the Act was enacted to provide the sole and exclusive means of recovery for all injuries arising out of accidents occurring within the course of employment. *Taynton v. Dersham*, 358 Pa.Super. 178, 516 A.2d 1241 (1986). The exclusive liability provision of the Act has obliterated the common law cause of action against the employer and foreclosed the adjudication of liability on the part of the employer. *Id.*

In recent years, our Supreme Court has considered at length the exclusivity provisions of the Act and a like provision in the related Occupational Disease Act, 77 P.S. § 1201 *et seq.* Analyzing the exclusivity provisions of both Acts, the Court stated:

The clear language of both of these sections dictates that the only remedy available to an injured employee is statutory.... While the language used by the legislature varies slightly between the two Acts, the same analysis of the historical underpinnings of the exclusive remedy doctrine applies equally to both. As we stated in [*Poyser v. Newman & Co., Inc.*, 514 Pa. 32, 522 A.2d 548 (1987) ], the exclusivity provisions of these acts are "a version of the historical *quid pro quo* that employers received in exchange for being subjected to a statutory no

fault system of compensation for worker injuries." *Id.* 514 Pa. at 37, 522 A.2d at 550.

*Barber v. Pittsburgh Corning Corp.,* 521 Pa. 29, 35, 555 A.2d 766, 769 (1989).

*Barber* and *Poyser,* then, merely state clearly a fundamental corollary of the law of workmen's compensation: a common law tort action by an employee against his employer for any work-related injury is barred by the exclusivity provisions of the Workmen's Compensation Act.

█ Appellant, however, contends the Act has no applicability where appellant pursued a workmen's compensation claim under the occupational disease section of the Act and that injury did not meet the technical and narrow definition of "occupational disease" as defined in the Act, and thereby appellant suffered a harm which cannot be compensated under the Act. *Greer v. United States Steel Corp.,* 475 Pa. 448, 380 A.2d 1221 (1977). We do not find this contention supported by either the relevant case law or the facts of this case.

Section 108 of the Act sets forth myriad defined diseases as occupational diseases within the meaning of the Act, of which sarcoidosis is not a defined occupational disease. Not wishing to delimit occupational diseases to those defined explicitly, section 27.1 also encompasses:

All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population.

77 P.S. § 27.1(n).

The workmen's compensation referee made the following pertinent findings of fact:

5. Claimant was diagnosed as having sarcoidosis at Allegheny General Hospital in March, 1981.

6. All of the medical evidence in this matter established that sarcoidosis was not work-related.

\*      \*      \*      \*      \*      \*

8. As a result of said employment, claimant did not contract or sustain any occupational disease or pulmonary injury.

9. Claimant did not establish by credible evidence any or all of the following:

(a) She was employed in an occupation or industry which constituted an occupational disease hazard;

(b) She was exposed to an occupational disease hazard at her place of employment;

(c) The incidence of her alleged occupational disease is substantially greater in the occupation or industry of repairing and clearing photocopying machines or the 800 typewriter;

(d) The identity or description of the causative factors of her alleged occupational disease;

(e) The causative factors were significantly present in her employment; and/or

(f) She was exposed to this significant presence.

10. Claimant's medical testimony is rejected. It is deemed equivocal, speculative, and unprobative.

11. Employer's medical and expert testimony is preferred and relied upon.

\* \* \* \* \* \*

17. Claimant's alleged disability is not work-related.

18. Claimant's sarcoidosis is not work-related. Nor was it aggravated or accelerated by her employment with employer.

19. Claimant failed to sustain her burden of proof. Her evidence is rejected; employer's is preferred.

Referee's Decision, 3/2/83, pp. 11–12.

■ Thus, the referee made an adjudication that appellant had not satisfied the requirements to establish her sarcoidosis as an occupational disease under section 27.1(n), but, moreover, the referee determined appellant had failed to carry her burden of proof in establishing that her sarcoidosis was in fact work-related. In essence, appellant suffered not from a statutory limitation, but from an evidentia-

ry failure. We agree with appellee that failure to meet the definition of occupational disease does not exclude a claimant from compensation under the workmen's compensation system. *See generally Pawlosky v. WCAB,* 514 Pa. 450, 525 A.2d 1204 (1987). Such definitions are merely procedural means of creating a non-conclusive presumption that an injury was work-related. Failure to establish the presumption is not dispositive; the claimant may still go forward in making out a case for workmen's compensation absent the presumption.

For the above reasons, we find appellants' argument without merit and continue to find the workmen's compensation system the exclusive remedy of injured employees, and we find appellants' reliance on *Greer, supra,* misplaced. We also cite with approval a portion of the trial court's Opinion distinguishing *Greer* from the case at bar.

> Facially, *Greer, supra,* appears to support Plaintiffs' position. An examination of the procedural posture of the case, however, reveals that no hearing was ever held on the merits of the claim. In *Greer,* the trial court denied the employer's motion for judgment on the pleadings and the employer appealed. The Superior Court reversed and granted judgment on the pleadings for the employer, and the employee appealed. Although the Supreme Court reversed the entry of judgment in favor of the employer, it did so because of uncertainty regarding factual questions which made it inappropriate to grant judgment on the pleadings. The Court further held that:
>
> > "It may well be appropriate for the court below to grant a stay pending administrative action in accordance with the doctrine of primary jurisdiction." *Greer,* 380 A.2d at 1223.
>
> The instant case is thus clearly distinguishable from *Greer, supra,* in that there has been an actual determination on the merits by the Workmen's Compensation Referee, the Workmen's Compensation Appeal Board and the Commonwealth Court of Pennsylvania, all of which were adverse to the Plaintiff.

Initially, Plaintiff-wife filed a claim petition requesting compensation for occupational disease under Section 108 of the Pennsylvania Workmen's Compensation Act. Plaintiff was given full and complete opportunity to present testimony and medical evidence. She submitted not only two medical reports, but a deposition of one of her examining physicians. The Workmen's Compensation Referee entered findings of fact and conclusions of law and denied her claim. Importantly, the Referee did not find that Plaintiff-wife had no cause of action, nor did the Appeal Board. Specifically, the Referee found that the sarcoidosis was "not work related," and that "Plaintiff did not sustain any occupational disease or pulmonary injury as a result of said employment." *See*, Referee's Decision at 3, Findings of Fact Nos. 6 and 8.

The Plaintiff appealed this decision of the Referee alleging that he erred because the record did not support his findings. She also claimed that he failed to enter any finding of fact concerning her "restrictive pathways disease", and that he "capriciously" disregarded competent evidence. The Appeal Board found that the Referee rejected her medical testimony as equivocal and speculative. The Board found that the Referee had lawfully exercised his discretion in rejecting Plaintiff's medical testimony and affirmed the Referee's decision on the basis that Plaintiff had failed to meet her burden of proof. The Appeal Board's decision was affirmed by the Commonwealth Court.

In essence, Plaintiff is asking this Court to permit her to relitigate the exact issue which has already been decided adversely to her, i.e., was her employment the cause of her injuries?

(Slip Op. at 4–6.)

█ The trial court found appellants were precluded from reasserting their cause of action at common law by virtue of the principles of collateral estoppel. We agree. Collateral estoppel principles apply to judgments from workmen's compensation boards in subsequent common law

tort actions. *Frederick v. American Hardware Supply,* 384 Pa.Super. 72, 557 A.2d 779 (1989). "The doctrine of collateral estoppel is a broader concept than res judicata. It operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." *Muhammad v. Strassburger,* 374 Pa.Super. 613, 618, 543 A.2d 1138, 1140 (1988) (quoting *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 236, 464 A.2d 1313, 1318 (1983)), allocatur granted, 520 Pa. 618, 554 A.2d 510 (1989).

■ A plea of collateral estoppel is valid if: 1) the issue decided in the prior adjudication was identical to the one presented in the later action; 2) there was a final judgment on the merits; 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *Sanders v. Sanders,* 384 Pa.Super. 311, 558 A.2d 556 (1989).

■ This Court's examination of the record persuades us the referee's decision, subsequently affirmed on appeal by the WCAB and by Commonwealth Court, has estoppel effect in this case. It is undisputed the litigant parties are identical. Appellant argues, however, the issue presented to and decided by the referee was a narrowly defined statutory one, i.e., had appellant suffered an occupational disease injury. In light of our previous discussion, though, this argument is without basis. As we stated, the referee found unequivocally appellant's injury was not work-related, and appellant had failed to sustain her burden of proof. This failure was grounded not in appellant's inability to establish her sarcoidosis as an occupational disease injury, for her claim proceeded without that determination, but rather, in appellant's inability to prove the causation of her injury was aggravated, accelerated or related in any way to her work for Xerox. This was the central issue in appellant's workmen's compensation claim, just as it is instantly,

and appellant was afforded a full and fair opportunity to litigate the issue before the referee. As that judgment is now final, appellants are estopped from pursuing the identical issue in a common law tort action. To find otherwise would be to undermine the concept of workmen's commpensation which has served the workers and economic structure of our society so well.

Order affirmed.