## King v. United Parcel Service Inc.

*Paul D. Nelson,* for plaintiff.
*Martin Wald,* for defendant United Parcel Service Inc.

KOUDELIS, *J.,* August 10, 1992—

## NATURE AND HISTORY OF CASE

This is an appeal from the court's order of April 2, 1992, granting the motion for summary judgment of defendant, United Parcel Service Inc. and its named employees.

The history of the case is as follows: This action was commenced by summons filed July 15, 1986. The complaint, filed November 20, 1987, alleged counts for wrongful discharge and related damages against United Parcel Service and its named employees (UPS defendants) and against Affirmative Personnel Testing and its named employees (Affirmative defendants). On December 20, 1989, the UPS defendants filed a motion for summary judgment. After Judge Prescott retired from the bench, the case was assigned to this court for disposition. This court granted the summary judgment motion on April 2, 1992. The appeal was filed April 22, 1992, thus necessitating this opinion.

## FACTS

The plaintiff was an employee of UPS and a union member from September 1979 through January 1984. In January 1984, he was promoted to a non-union supervisory position. In 1985, during an investigation of thefts from the UPS facility, plaintiff agreed to submit to a polygraph examination administered by the Affirmative defendants. Subsequent to the examination, plaintiff's employment was terminated.

The plaintiff alleges that the examination exceeded its agreed-upon scope (the current thefts) and delved into his knowledge of prior dishonest incidents involving other employees. He also states that he passed the examination, but that the complete examination results were improperly released to the UPS defendants.

UPS responds that the plaintiff signed an agreement acknowledging that the examination was taken voluntarily, not as a condition of employment, and that he released UPS from all claims arising from it. UPS further claims that plaintiff signed a consent form waiving all claims against UPS and the Affirmative defendants arising out of the polygraph examination.

UPS also asserts that the plaintiff's dismissal was based on his polygraph response describing an occasion around Christmas 1983 on which he assisted another employee in directing a Cabbage Patch doll to the home of a friend instead of to the named addressee and plaintiff's subsequent refusal to identify the other employee.

## DISCUSSION

The plaintiff's statement of matters complained of on appeal raises numerous issues, which collectively con-

stitute but a single issue, i.e. whether the court erred in granting the UPS defendants' motion for summary judgment or, more precisely, whether any of the matters raised by plaintiff constitute any "genuine issue as to any material fact" and whether the court misstated or misapplied the applicable law. *Askew v. Zeller,* 361 Pa. Super. 35, 37-38, 521 A.2d 459, 461 (1987).

A summary judgment motion must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits ... show that there is no genuine issue as to any material fact and that [defendant] is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b).

The requirements for summary judgment have been met in this case.

The plaintiff claims damages for wrongful discharge, breach of contract, invasion of privacy, intentional infliction of emotional distress, defamation and malicious prosecution. The court will discuss the first two claims individually and the remaining claims (the intentional torts) collectively.

## I. WRONGFUL DISCHARGE

Prior to taking the polygraph examination, the plaintiff signed an agreement and a consent form. UPS states that plaintiff voluntarily took the examination, was not required to take it as a condition of continued employment, released all parties from all claims arising therefrom, and authorized release of results to interested parties.

Title 18 Pa.C.S. §7321(a) prohibits conditioning employment or continuation of employment upon taking a polygraph examination. The plaintiff relies on this public

policy of the Commonwealth as grounds to repudiate the agreement and consent form and alleges his termination was in violation of that policy.

The court finds that plaintiff presents no issue as to any material fact that the forms were signed as a condition of continuing employment or that he was terminated in contravention of Commonwealth public policy. He relies heavily on *Leibowitz v. H.S. Winston Co.,* 342 Pa. Super. 456, 493 A.2d 111 (1985). However, the *Leibowitz* case is inapposite both factually and legally. In that case, the plaintiff was fired because he failed the lie detector test and for no other reason. Further, a crucial issue there was whether the plaintiff had been compelled to sign the consent and waiver agreement and undergo the examination as a condition for continued employment. All of the pleadings, depositions, answers, admissions and affidavits show that plaintiff voluntarily agreed to take the examination and did not sign the agreement and consent and undergo the examination as a condition of continued employment. On their face, the agreement and consent forms authorize release of the complete results of the examination. However, this case does not turn on whether plaintiff was compelled to undergo a polygraph examination as a condition of continued employment. Even assuming that plaintiff took the examination under compulsion and as a condition of his continued employment, the reasons for his discharge had nothing to do with those factors. Plaintiff took and passed the examination. In the interviews which followed the polygraph examination, plaintiff refused to identify the UPS employee whom he had assisted in misdirecting a package two years earlier resulting in the theft of the article. He was subsequently discharged for that reason. In these

circumstances, there is no violation of any law or public policy in terminating an at-will employment. *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990).

Plaintiff argues that the UPS defense to his wrongful discharge claim is barred by the collateral estoppel effect of a referee's decision in his unemployment compensation benefits case. Reliance on collateral estoppel in this case is misplaced.

Collateral estoppel requires identical issues in both adjudications. *Safeguard Mutual Life Insurance Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975). The referee in the Workers' Compensation Hearing determined whether appellant was guilty of "willful misconduct" as defined in 43 Pa.C.S. §802(e) and, therefore, ineligible for unemployment compensation benefits. The referee found appellant was eligible in that case. The issue in this case, where plaintiff alleges wrongful discharge, is whether UPS discharged him in violation of a clear public policy mandate. As discussed above, the court is presented with no such violation here.

## II. BREACH OF CONTRACT

A review of everything before the court clearly establishes that the plaintiff was an at-will employee and, therefore, his claim for breach of contract fails. In this Commonwealth, it is settled law that an employment relationship is presumed to be at-will unless the parties agree on a definite term or on conditions for termination. *McGonagle v. Union Fidelity Corp.,* 383 Pa. Super. 223, 556 A.2d 878 (1989); *Greene v. Oliver Realty Inc.,* 363 Pa. Super. 534, 526 A.2d 1192, *appeal denied,* 517 Pa. 607, 536 A.2d 1331 (1987).

There is nothing in the record concerning the duration of plaintiff's managerial employment. In his deposition, plaintiff describes discussions during his promotion in-

terviews regarding what would happen if he made mistakes as a manager. He states he was assured that he would not be dismissed for arbitrary reasons or for mistakes made as a new supervisor.

These assurances fail to make out a definite employment agreement to overcome the at-will presumption. *Veno v. Meredith*, 357 Pa. Super. 85, 515 A.2d 571 (1986); *DiBonaventura v. Conrail*, 372 Pa. Super. 420, 539 A.2d 865 (1988).

## III. INTENTIONAL TORT CLAIMS

The appellant's final claims are for invasion of privacy, intentional infliction of emotional distress, defamation and malicious prosecution. The court finds that these claims are barred by the exclusive remedy provisions of the Pennsylvania Workers' Compensation Act. 77 Pa.C.S. §481 (1974). *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 469 A.2d 158 (1983); *James v. International Business Machine*, 737 F. Supp. 1420 (E.D. Pa. 1990); *Papa v. Franklin Mint Corp.*, 400 Pa. Super. 358, 583 A.2d 826 (1990).

Appellant argues that this exclusive remedy is not a viable defense because it does not apply to matters involving a violation of law. As discussed above, this court finds nothing in this record to support any violation of the law or public policy in this case.

## DISPOSITION

Based on the pleadings, depositions, answers, admissions and affidavits and for the foregoing reasons, the court granted the motion for summary judgment of the UPS defendants.